UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| PLANNED PARENTHOOD MINNESOTA, NORTH DAKOTA, SOUTH DAKOTA, and CAROL E. BALL, M.D.,<br><br>Plaintiffs,<br><br>vs.<br><br>MIKE ROUNDS, Governor, and LARRY LONG, Attorney General, in their official capacities<br><br>Defendants,<br><br>ALPHA CENTER, BLACK HILLS CRISIS PREGNANCY CENTER, d/b/a Care Net, DR. GLENN RIDDER, M.D., and ELEANOR D. LARSEN, M.A., L.S.W.A.,<br><br>Intervenors. | ) | Civ. 05-4077-KES<br><br>ORDER GRANTING MOTION TO INTERVENE |

Alpha Center, Black Hills Crisis Pregnancy Center, Dr. Glenn Ridder, M.D., and Eleanor D. Larsen, M.A., L.S.W.A., move to intervene as defendants in this case. Plaintiffs Planned Parenthood Minnesota, North Dakota, South Dakota and Carol E. Ball oppose the motion. Defendants Mike Rounds and Larry Long, collectively referred to as the State, have no objection to intervention. For the reasons discussed below, the motion is granted.

## BACKGROUND

On June 6, 2005, plaintiffs filed a complaint and moved for a preliminary injunction preventing enforcement of H.B. 1166, 80th Legis. Assem., Reg. Sess. (S.D. 2005). H.B. 1166 amended the mandatory informed consent disclosures that a physician must give to a patient before performing an abortion. The court granted the preliminary injunction on June 30, 2005, thereby preventing H.B. 1166 from becoming effective, after finding the statute may violate the First Amendment protection against compelled speech.

Section 7 of H.B. 1166, in pertinent part, would require a physician or his agent to provide the following information to a patient at least twenty-four hours before performing an abortion: "The name, address, and telephone number of a pregnancy help center in the reasonable proximity of the abortion facility where the abortion will be performed." In their complaint, plaintiffs contend that this provision is unconstitutionally vague. (Docket 1). Accordingly, they seek an injunction prohibiting enforcement.[1]

On July 28, 2005, Alpha Center, Black Hills Crisis Pregnancy Center, Dr. Ridder, and Ms. Larsen, collectively referred to as applicants,[2] moved to

[1] In its order granting a preliminary injunction, the court did not reach the issue of whether this section is unconstitutionally vague. (Docket 40). Nevertheless, this remains a live issue at the permanent injunction stage.

[2] For the most part, the same arguments for intervention apply to all applicants. Accordingly, the court will refer to the applicants collectively and will differentiate between individuals applicants where relevant.

intervene in the litigation. Both the Alpha Center and the Black Hills Crisis Pregnancy Center are nonprofit organizations that provide, among other things, counseling to pregnant women. Ms. Larsen is a licensed social worker and the director of counseling at the Alpha Center. She also provides counseling for pregnant women at Alpha Center. Dr. Ridder is also one of the counselors for Alpha Center.

Although H.B. 1166 does not define "pregnancy help center," both Alpha Center and Black Hills Crisis Pregnancy Center may qualify. (Docket 30; 45-2; 45-3.) Thus, both stand to benefit by obtaining patient referrals pursuant to section 7. Moreover, Dr. Ridder and Ms. Larsen also stand to gain additional patients because they both work for Alpha Center. If the court enjoins enforcement of section 7, applicants will lose these benefits.

Applicants contend that they are entitled to intervene as a matter of right pursuant to Fed. R. Civ. P. 24(a). Alternatively, they seek permissive intervention pursuant to Fed. R. Civ. P. 24(b).

**DISCUSSION**

In order to intervene, applicants must establish that they have Article III standing and that the requirements of either Fed. R. Civ. P. 24(a) or 24(b) are satisfied. See South Dakota v. Ubbelohde, 330 F.3d 1014, 1024-25 (8th Cir. 2003).

## I. Article III Standing

"The prospective intervenors [must] have Article III standing to litigate their claims in federal court." Mausolf v. Babbitt, 85 F.3d 1295, 1300 (8th Cir. 1996). "To establish Article III standing, a [party] has the burden of proving: (1) that he or she suffered an 'injury-in-fact,' (2) a causal relationship between the injury and the challenged conduct, and (3) that the injury likely will be redressed by a favorable decision." Steger v. Franco, Inc., 228 F.3d 889, 893 (8th Cir. 2000). See also Lujan v. Defenders of Wildlife, 504 U.S. 555, 561-62, 112 S. Ct. 2130, 2137, 119 L. Ed. 2d 351 (1992). Applicants must allege facts supporting each standing element. See Shain v. Veneman, 376 F.3d 815, 818 (8th Cir. 2004).

"An injury in fact is a 'direct injury' resulting from the challenged conduct." McClain v. Am. Econ. Ins. Co., Nos. 04-2346, 04-2347, 04-2353, 2005 WL 2138813, at *1 (8th Cir. Sept. 7, 2005). The proposed intervenor "must show that he or she 'sustained or is immediately in danger of sustaining some direct injury as the result of the challenged . . . conduct and [that] the injury or threat of injury [is] both real and immediate . . . ." Steger, 228 F.3d at 892 (alterations and omissions in original) (quoting City of Los Angeles v. Lyons, 461 U.S. 95, 102, 103 S. Ct. 1660, 75 L. Ed. 2d 675 (1983)). Denial of a benefit can constitute an injury-in-fact. See Oti Kaga, Inc. v. S.D.

Hous. Dev. Auth., 342 F.3d 871, 878 (8th Cir. 2003) (holding that improper denial of tax credits constituted an injury-in-fact).

Applicants are in immediate danger of sustaining a direct injury if the court finds the referral requirement is unconstitutionally vague because they will lose the benefit of referrals pursuant to the statute. See Oti Kaga, Inc., 342 F.3d at 878. Decreased referrals also frustrates applicants' primary mission—counseling pregnant women prior to obtaining an abortion. (Docket 45-2; 45-3). This alone is a sufficient injury-in-fact. See Granville House, Inc. v. Dep't of Health & Human Servs., 715 F.2d 1292, 1298 (8th Cir. 1983) (stating that treatment center whose "primary mission" was to serve indigent patients had suffered an injury-in-fact when the denial of Medicaid coverage for the center's services reduced the number of indigent patients it could treat).

The final two standing elements are easily satisfied in this case. There is a causal relationship between applicants' injury—reduced client referrals—and the constitutionality of H.B. 1166, because if the court finds H.B. 1166 unconstitutionally vague, it will likely enjoin enforcement, thereby not requiring the disclosure of the "pregnancy help center" information. See S.D. Farm Bureau, Inc. v. South Dakota, 189 F.R.D. 560, 563 (D.S.D. 1999). Additionally, a favorable ruling on constitutionality would redress applicants' injury because the statute would be enforceable and applicants would obtain

referrals pursuant to the statute. See id. Accordingly, applicants satisfy all three elements for Article III standing.

## II. Intervention of Right

Intervention of right under Rule 24(a):

> requires that one seeking intervention file a timely application, and that the applicant then satisfy a tripartite test: 1) the party must have a recognized interest in the subject matter of the litigation; 2) that interest must be one that might be impaired by the disposition of the litigation; and 3) the interest must not be adequately protected by the existing parties.

Mille Lacs Band of Chippewa Indians v. Minnesota, 989 F.2d 994, 997 (8th Cir. 1993). Rule 24(a) is construed liberally and the court must "resolve[s] any doubts in favor of the proposed intervenors." Kan. Pub. Employees Ret. Sys. v. Reimer & Kroger Assocs., Inc., 60 F.3d 1304, 1308 (8th Cir. 1995).

### 1. Timeliness of Applicants' Motion

"Rule 24(a) expressly requires that a motion to intervene be 'timely.'" United States v. Union Elec. Co., 64 F.3d 1152, 1158 (8th Cir. 1995). "Whether a motion to intervene is timely is determined by considering all the circumstances of the case." Mille Lacs Band of Chippewa Indians, 989 F.2d at 998. In determining timeliness, the Eighth Circuit has focused on three factors: "the reason for any delay by the proposed intervenor in seeking intervention, how far the litigation has progressed before the motion to intervene is filed, and how much prejudice the delay in seeking intervention

may cause to other parties if intervention is allowed." Union Elec. Co., 64 F.3d at 1159.

Plaintiffs do not dispute the timeliness of the applicants' motion. Applicants filed their motion on July 28, 2005, less than two months after the initial complaint was filed. The discovery deadline is January 13, 2006, nearly four months away. (Docket 51). Applicants contend that their delay in filing was attributable to the time required to obtain board approval to proceed with the litigation. This is a plausible explanation. See Ark. Elec. Energy Consumers v. Middle S. Energy, Inc., 772 F.2d 401, 403 (8th Cir. 1985). Finally, plaintiffs do not contend that intervention will prejudice them in any manner. See Union Electric Co., 64 F.3d at 1159. Accordingly, the motion to intervene is timely.

**2. Applicants' Interest**

"[The] interest identified must be more than peripheral or insubstantial; the applicant must assert a 'significantly protectable interest.'" Planned Parenthood of Minn., Inc. v. Citizens for Cmty. Action, 558 F.2d 861, 869 (8th Cir. 1977). "Although the intervenor cannot rely on an interest that is wholly remote and speculative, the intervention may be based on an interest that is contingent upon the outcome of the litigation." Union Elec. Co., 64 F.3d at 1162. The interest test is construed broadly, and all parties affected by the litigation should be included if practicable. See id. at 1162 ("The court should

be mindful that '[t]he interest test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned parties as is compatible with efficiency and due process.'"); see also 7C Charles Alan Wright, et al., Federal Practice and Procedure § 1908, at 284-85 (2d ed. 1986) (suggesting that the impairment prong and the adequate representation prong, rather than the interest prong, should be the primary vehicles for limiting intervention).

Applicants have an interest in H.B. 1166's constitutionality because their primary mission is counseling pregnant women. Section 7 promotes this mission by requiring a physician or his agent to provide a patient with the name, address, and telephone number of a pregnancy help center at least 24 hours before an abortion is performed. Thus, applicants have a protectable interest in enforcement of the referral provision.[3] Cf. Granville House, Inc., 715 F.2d at 1297 (finding an injury when government action impeded organization's "primary mission"). Additionally, in the past, Dr. Ridder has been retained to provide obstetrical services for patients that he counseled at Alpha Center. (Docket 45-4). Thus, he has an economic interest in enforcement of section 7 because it may lead to an increase in patients that

---

[3] Applicants' interest is virtually identical to the injury-in-fact supporting Article III standing. This is permissible and to be expected. See Ubbelohde, 330 F.3d 1014, 1025 (8th Cir. 2003) (holding that the applicant's alleged injury established both Article III standing and an interest in the litigation).

retain him for other services. See Mille Lacs Band of Chippewa Indians, 989 F.2d at 998 (holding that sufficient Rule 24(a) interest existed when the litigation's outcome could affect the intervenor's property values). As a beneficiary of H.B. 1166's referral provision, applicants have an interest in the statute's enforceability, and hence, its constitutionality.

**3. Impairment of Applicants' Interest**

"Rule 24(a)(2) requires only that disposition of the action 'may as a practical matter impair or impede the applicant's ability to protect [its] interest.'" Kan. Pub. Employees Ret. Sys., 60 F.3d at 1307 (alteration in original) (quoting Mille Lacs Band of Chippewa Indians, 989 F.2d at 998). Applicants "need not show that, but for its intervention, its interest 'would be' impaired by the operation of res judicata, collateral estoppel, or stare decisis, but rather that its interest 'may be so impaired.'" Id. at 1308. "[T]he potential for a negative stare decisis effect 'may supply that practical disadvantage which warrants intervention of right.'" Stone v. First Union Corp., 371 F.3d 1305, 1309-10 (11th Cir. 2004) (emphasis in original) (quoting Chiles v. Thornburgh, 865 F.2d 1197, 1214 (11th Cir. 1989)). The court must consider the practical impact of the litigation as a whole on applicants' interest. Ubbelohde, 330 F.3d at 1024-25.

As the above Article III standing discussion demonstrates, the court's decision that H.B. 1166 is unconstitutionally vague would prevent

enforcement of section 7, and thus, would impair applicants' interest in obtaining additional patients. Further, applicants would likely struggle in defending the constitutionality of H.B. 1166 in a different proceeding because this court's decision would be considered highly persuasive authority. See Stone, 371 F.3d at 1309-10. Thus, as a practical matter, applicants' interest may be impaired by the disposition of this case.

**4. Adequate Protection by Existing Parties**

Applicants must establish that the existing parties do not adequately represent their interest. The adequacy of representation is determined "'by comparing the interests of the proposed intervenor with the interests of the current parties to the action.'" Little Rock Sch. Dist. v. N. Little Rock Sch. Dist., 378 F.3d 774, 780 (8th Cir. 2004) (quoting Sierra Club v. Robertson, 960 F.2d 83, 86 (8th Cir. 1992)). "Typically, persons seeking intervention need only carry a 'minimal' burden of showing that their interests are inadequately represented by existing parties." Mille Lacs Band of Chippewa Indians, 989 F.2d at 999. "But when one of the parties is an arm or agency of the government, and the case concerns a matter of 'sovereign interest,' the bar is raised, because in such cases the government is 'presumed to represent the interests of all its citizens.'" Mausolf, 85 F.3d at 1303 (emphasis in original) (quoting Union Elec. Co., 64 F.3d at 1168-69). The party can rebut this

presumption "by showing that its interests at risk in the litigation are not shared by the general citizenry." Little Rock Sch. Dist., 378 F.3d at 780.

Here, applicants' interests diverge from those of the State. The State's interest in H.B. 1166, as reflected in the legislature's findings, is guaranteeing that women obtain all relevant information prior to choosing an abortion, not necessarily in referring women to pregnancy crisis centers. Indeed, the State could decide to provide the information itself, and thus, choose to settle with plaintiffs or refrain from fully litigating the constitutionality of section 7's referral requirement. Applicants have a narrower, more parochial interest—increasing the number of patients through enforcement of the statutory referral provision. Accordingly, the State's presence in the litigation does not adequately protect applicants' interest. See Mille Lacs Band of Chippewa Indians, 989 F.2d at 1001 (stating that the representation by the government is inadequate when the applicants have a "narrower and more parochial" interest).

As discussed above, Rule 24(a)(2) is to be construed liberally in an effort to achieve judicial efficiency by resolving as many disputes as practical in one proceeding. Sierra Club v. Robertson, 960 F.2d 83, 86 (8th Cir. 1992). With this in mind, the court finds that applicants satisfy all four elements of Rule 24(a)(2). Accordingly, they are entitled to intervene as a matter of right.

**III. Permissive Intervention**

Alternatively, applicants seek permissive intervention under Rule 24(b)(2). Rule 24(b) permits the court to grant intervention upon a timely motion to intervene when the applicant has "a question of law or fact in common" with the underlying litigation. Whether to grant permissive intervention rests within the court's discretion. South Dakota ex rel. Barnett v. U.S. Dep't of Interior, 317 F.3d 783, 788 (8th Cir. 2003). "The principle consideration in ruling on a 24(b) motion is whether the proposed intervention would unduly delay or prejudice the adjudication of the parties' rights." Id. at 787.

As discussed above, applicants' motion is timely. Additionally, plaintiffs concede that applicants have a question of law or fact in common with the underlying litigation. (Docket 58). Thus, the only issue remaining is whether permissive intervention would unduly delay or prejudice the parties. Considering the early stage of the litigation, the timeliness of the motion, and that discovery has not concluded, intervention will not unduly delay the litigation.

Plaintiffs contend that intervention is unduly prejudicial because it would double the briefing while providing minimal benefit because the State already adequately represents applicants' interest. (Docket 58). Regardless of the adequacy of representation discussed above, plaintiffs' argument fails

because it misconstrues the calculus under Rule 26(b). See South Dakota ex rel. Barnett, 317 F.3d at 787 (stating that "adequacy of protection is only a minor variable in the Rule 24(b) decision calculus"). Rather, the focus is on the prejudice created by the additional briefing. Based on their proposed answer, applicants are not raising additional legal issues. (Docket 36; 45-7). Thus, any additional briefing will not unduly prejudice plaintiffs. See EEOC v. Woodmen of the World Life Ins. Soc., 330 F. Supp. 2d 1049, 1055-56 (D. Neb. 2004) (stating that intervention is inappropriate where applicants will increase the scope of the legal issues); In re Baycol Prods. Litig., 214 F.R.D. 542, 544 (D. Minn. 2003) (permitting intervention when it would not cause the parties to expend significant additional resources).

Additionally, plaintiffs contend that intervention would impermissibly enable applicants to appeal a decision that the State chose not to appeal. Plaintiffs rely on Chiglo v. City of Preston, 104 F.3d 185, 188-89 (8th Cir. 1997), and Little Rock Sch. Dist., 378 F.3d at 781. Those cases, however, are inapposite because both focus on whether adequate representation barred intervention as matter of right. As discussed above, adequate representation has minimal bearing on permissive intervention. Accordingly, plaintiffs' contention is unavailing.

Neither plaintiffs, nor the record, show that intervention will cause undue prejudice. Indeed, intervention may well aid the court in deciding the

complex issues of this case. See S.D. Farm Bureau, Inc., 189 F.R.D. at 566. Additionally, the court finds that the interests of judicial efficiency warrant granting intervention. Accordingly, the court exercises its discretion and grants applicants permission to intervene as defendants under Fed. R. Civ. P. 24(b)(2).

**IV. Oral Argument**

In light of the findings above, oral argument is unnecessary. Accordingly, applicants' request for oral argument is denied. It is hereby

ORDERED that the motion of Alpha Center, Black Hills Crisis Pregnancy Center, d/b/a Care Net, Glenn A. Ridder, M.D., and Eleanor D. Larsen, M.A., L.S.W.A., to intervene (Docket 45) is granted. Intervenors' answer to the complaint is due by **September 30, 2005**.

IT IS FURTHER ORDERED that the request for oral argument (Docket 45) is denied.

Dated September 23, 2005.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE