UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| PLANNED PARENTHOOD<br>MINNESOTA, NORTH DAKOTA,<br>SOUTH DAKOTA, and<br>CAROL E. BALL, M.D., | ) )<br>)<br>)<br>) | Civ.  05-4077-KES |
| | ) | |
| Plaintiffs, | )<br>) | ORDER |
| vs. | )<br>) | |
| MIKE ROUNDS, Governor, and<br>LARRY LONG, Attorney General, in<br>their official capacities | )<br>)<br>) | |
| | ) | |
| Defendants, | )<br>) | |
| ALPHA CENTER, BLACK HILLS<br>CRISIS PREGNANCY CENTER,<br>d/b/a Care Net,<br>DR. GLENN RIDDER, M.D., and<br>ELEANOR D. LARSEN, M.A.,<br>L.S.W.A., | )<br>)<br>)<br>)<br>)<br>)<br>) | |
| Intervenors. | ) | |

Plaintiffs, Planned Parenthood Minnesota, North Dakota, South

Dakota, and Carol E. Ball, M.D., filed a complaint against Mike Rounds and

Larry Long (collectively referred to as State) challenging the constitutionality

of H.B. 1166, 80th Legis. Assem., Reg. Sess. (S.D. 2005), which amended the

disclosures contained in South Dakota's abortion informed consent statute.

Alpha Center, Black Hills Crisis Pregnancy Center, Dr. Glenn Ridder, M.D.,

and Eleanor D. Larsen, M.A., L.S.W.A., (collectively referred to as Intervenors) intervened as defendants in the action.

The court's order rules on the following pending motions: plaintiffs' motion (Docket 102) to amend their complaint; plaintiffs' motion (Docket 102) to terminate intervention; Intervenors' and State's joint motion (Docket 106) to extend discovery; plaintiffs' motion (Docket 109) to preclude testimony from late-disclosed expert witness; and Intervenors' motion (Docket 139) for partial summary judgment.

## BACKGROUND

On June 6, 2005, plaintiffs filed a complaint and moved for a preliminary injunction preventing enforcement of H.B. 1166, which amended the mandatory informed consent disclosures that a physician must give to a patient before performing an abortion.  After finding the statute may violate the First Amendment protection against compelled speech, the court granted the preliminary injunction on June 30, 2005, thereby preventing H.B. 1166 from becoming effective.

Plaintiffs contest the constitutionality of section 7(1) of H.B. 1166, which, in pertinent part, would require physicians to provide their patients with written disclosures containing the following information:  "That the abortion will terminate the life of a whole, separate, unique, living human being; That the pregnant woman has an existing relationship with that unborn human being and that the relationship enjoys protection under the

United States Constitution and under the laws of South Dakota; and That by having an abortion, her existing relationship and her existing constitutional rights with regards to that relationship will be terminated." H.B. 1166, § 7(1)(b)–(d). The written disclosures also must describe "all known medical risks of the procedure and statistically significant risk factors" including, but not limited to, "depression and related psychological distress [and] increased risk of suicide ideation and suicide." H.B. 1166, § 7(1)(e)(i)–(ii). Plaintiffs also contest the constitutionality of section 7(2)(c)'s referral requirement, which would require a physician or his agent to provide the following information to a patient at least twenty-four hours before performing an abortion: "The name, address, and telephone number of a pregnancy help center in the reasonable proximity of the abortion facility where the abortion will be performed."

Intervenors moved to intervene, and the court granted intervention because Intervenors may have qualified as "pregnancy help centers." (Docket 69). As such, Intervenors stood to gain statutory referrals through enforcement of section 7(2)(c). If, however, the court found that section 7(2)(c) was unconstitutional and enjoined its enforcement, then Intervenors would lose this benefit. Plaintiffs now move to amend their complaint to withdraw their challenge of section 7(2)(c) and argue that this amendment moots the only basis for intervention.

**DISCUSSION**

## I.   Motion to Amend Complaint

Plaintiffs move for leave to amend their complaint.  Specifically, plaintiffs seek leave to amend their complaint to abandon two specific causes of action: (A) the contention that section 7(2)(c)'s referral requirement is unconstitutionally vague; and (B) the contention that section 7(c)(e)(i) is unconstitutionally false and misleading.

### A.   Section 7(2)(c)

Plaintiffs move to amend their complaint to withdraw their challenge to H.B. 1166, section 7(2)(c), which would require a physician or a physician's agent to provide the patient with "the name, address, and telephone number of a pregnancy help center in reasonable proximity of the abortion facility where the abortion will be performed" at least twenty-four hours before the abortion is performed.  Plaintiffs' complaint alleges that this referral requirement is unconstitutionally vague.  Plaintiffs now seek to amend their complaint to abandon this particular claim.

Fed. R. Civ. P. 15(a) governs the amendment of pleadings.  According to Rule 15(a), a party can amend a pleading in one of three instances.  First, "[a] party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served . . . ."  Second, a party can amend by "written consent of the adverse party."  Finally, if neither one nor two are satisfied, then the party can only amend by "leave of the court."

4

Here, plaintiffs seek to amend their complaint after a responsive pleading—the answer—has been filed.  In addition, State and the Intervenors both object to the motion to amend.  Accordingly, plaintiffs can only amend through leave of the court.

Rule 15(a) states that leave to amend "shall be freely given when justice so requires."  The liberal thrust of the Federal Rules of Civil Procedure promotes granting leave to amend.  See Roberson v. Hayti Police Dep't, 241 F.3d 992, 995 (8th Cir. 2001).  "'Only limited circumstances justify a district court's refusal to grant leave to amend pleadings: Undue delay, bad faith on the part of the moving party, futility of the amendment or unfair prejudice to the opposing party.'"  Costello, Porter, Hill, Heisterkamp & Bushnell v. Providers Fid. Life Ins. Co., 958 F.2d 836, 839 (8th Cir. 1992) (quoting Sanders v. Clemco Indus., 823 F.2d 214, 216 (8th Cir. 1987)); see also Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 229, 9 L. Ed. 2d 222 (1962).  Delay, without prejudice to the opposing party, is insufficient reason to deny the motion to amend.  See Doe v. Cassel, 403 F.3d 986, 991 (8th Cir. 2005).  "'The burden of proof of prejudice is on the party opposing the motion.'"  Roberson, 241 F.3d at 995 (quoting Sanders, 823 F.2d at 217).  When granting leave to amend, the court can impose conditions in an effort to alleviate any prejudice.  See Boyce v. Augusta-Richmond County, 111 F. Supp. 2d 1363, 1376 (S.D. Ga. 2000); see also 6 Charles Alan Wright,

Arthur R. Miller and Mary Kay Kane, <u>Federal Practice and Procedure</u> § 1486 (2d ed. 1990) [hereinafter Wright & Miller].

Both State and Intervenors argue that they would be unfairly prejudiced if the amendment is granted because they have already spent considerable time and money litigating this claim, and because plaintiffs are using the amendment process to avoid an adverse determination on the merits without foregoing the ability to litigate their claim in the future. State argues in the alternative that if the court should dismiss plaintiffs' challenge to the referral requirement, it should be dismissed with prejudice.

The risk of incurring the costs related to a subsequent challenge to the constitutionality of section 7(2)(c)'s referral requirement does prejudice State and Intervenors. Both State and Intervenors have an interest in not incurring those costs again in the future. Rather than prohibiting amendment because of this prejudice, however, the court will permit the amendment but impose the condition proposed by plaintiffs: namely, that if plaintiffs ever commence a new action in state or federal court contesting the constitutionality of section 7(2)(c) of H.B. 1166, then the court, upon motion of either State or Intervenors, will order plaintiffs to pay for the duplicated attorneys' fees, expert witness fees, and costs reasonably incurred by State and Intervenors while litigating this claim. Similar conditions have commonly been imposed by other courts when plaintiffs seeks voluntary dismissal

6

without prejudice of their action under Fed. R. Civ. P. 41(a)(2).[1]  See <u>Herring</u> <u>v. City of Whitehall</u>, 804 F.2d 464, 465-67 (8th Cir. 1986); <u>see also</u> <u>Swanigan</u> <u>v. Disetronic Med. Sys., Inc.</u>, No. 05-04278-CV-C-NKL, 2006 WL 1194977, at *1 (W.D. Mo. May 2, 2006).  By conditioning plaintiffs' amendment as such, the court can remedy the potential prejudice to State and Intervenors without forsaking plaintiffs' ability to shape the litigation by amending their complaint.

Intervenors argue that the proposed amendment would unfairly prejudice them because plaintiffs should have moved to amend earlier before Intervenors spent time and money on discovery regarding the constitutionality of section 7(2)(c).  Although the court acknowledges that Intervenors have expended time and money engaging in discovery and motion practice, none of these expenses were caused by plaintiffs' proposed amendment.  As such, the amendment will not prejudice Intervenors.  In fact,

---

[1] Although it is unclear whether plaintiffs' proposed amendment, which withdraws one of their causes-of-action, should be analyzed as a voluntary dismissal of an action under Fed. R. Civ. P. 41(a)(2) rather than an amendment to a pleading under Rule 15(a), this does not matter because the Eighth Circuit has recognized that the difference between Rule 15(a) and Rule 41(a)(2) in this context is technical rather than substantive.  <u>See</u> <u>Wilson v. Crouse-Hinds Co.</u>, 556 F.2d 870, 873 (8th Cir. 1977); <u>Johnston v. Cartwright</u>, 355 F.2d 32, 39 (8th Cir. 1966); <u>see also</u> 6 Wright & Miller, § 1479 (2d ed. 1990).  In any event, no one here suggests that the court should consider the propriety of plaintiffs' proposed amendment under Rule 41(a)(2) rather than 15(a), and thus, the court uses Rule 15(a) as the appropriate standard.  The court does, however, look to the conditions commonly used in Rule 41(a)(2) dismissals in fashioning the conditional amendment in this case.

plaintiffs' proposed amendment saves Intervenors, who are defendants in this case, from incurring additional litigation expenses associated with defending the constitutionality of section 7(2)(c) at trial.  As a practical matter, Intervenors have, for the time being at least, successfully defended the referral requirement, and Intervenors are not unfairly prejudiced by plaintiffs' proposed amendment.

In short, plaintiffs move to amend their complaint to drop their challenge to the constitutionality of section 7(2)(c).  The court welcomes plaintiffs' efforts to streamline this case and narrow the issues to be decided, particularly when plaintiffs' motion may prevent the court from deciding constitutional issues needlessly.  Cf. United States v. Allen, 406 F.3d 940, 946 (8th Cir. 2005) (indicating that federal courts should avoid "unnecessary adjudication of constitutional issues"); United States v. Turechek, 138 F.3d 1226, 1229 (8th Cir. 1998).  Any prejudice to State or Intervenors is alleviated by conditioning the amendment as discussed above.  Accordingly, the court exercises its discretion and grants plaintiffs' motion (Docket 102) seeking leave to amend their complaint to exclude their challenge to the constitutionality of section 7(2)(c)'s referral requirement.

### B.    Section 7(1)(e)(i)

Originally, plaintiffs contested the constitutionality of section 7(1)(e), which requires physicians to inform their patient about "all known medical risks of the procedure and statistically significant risk factors to which the

8

pregnant woman would be subjected, including: (i) Depression and related psychological distress; (ii) Increased risk of suicide ideation and suicide . . . ." Plaintiffs contended that this provision was unconstitutionally vague, and that it requires physicians to provide false or misleading information, which unconstitutionally chilled a woman's right to privacy under the Fourteenth Amendment. Plaintiffs now seek to amend their complaint to withdraw their argument that section 7(1)(e)(i)'s mandatory disclosure of "[d]epression and related psychological distress" as a risk associated with abortion is unconstitutional.

State and Intervenors argue that they are prejudiced by this amendment because they will not obtain a decision on the merits of the constitutionality of section 7(1)(e)(i), despite their expenditures of considerable time and money on this issue. Like above, however, the court finds that the proper remedy for this prejudice is to impose conditions on the amendment. The court will permit amendment, but if plaintiffs ever commence a new action in state or federal court contesting the constitutionality of section 7(1)(e)(i) of H.B. 1166, then the court, upon motion of either State or Intervenors, will order plaintiffs to pay for the duplicated attorneys' fees, expert witness fees, and costs reasonably incurred by State and Intervenors while litigating this claim. This condition remedies the prejudice experienced by State and Intervenors.

Intervenors also argue that plaintiffs should not be able to amend their complaint because plaintiffs are still challenging section 7(1)(e)(ii), which requires physicians to disclose that one of the risks of abortion is "[i]ncreased risk of suicide ideation and suicide." Plaintiffs allege that this statement is unconstitutionally false and misleading. Intervenors argue that the risk of suicide cannot be separated from the risk of depression, and thus, as a practical matter, whether section 7(1)(e)(ii) is false and misleading requires a determination of whether abortion also causes depression. As such, Intervenors argue that the court will have to make findings on the very issue that plaintiffs seek to remove from issue with this amendment.

The court disagrees with the argument. Although evidence of abortion-related depression may be admissible to prove an increased risk of suicide, this evidence does not require the court to actually decide whether the requirement that physicians disclose to their patients that depression is a risk associated with abortions violates the U.S. Constitution. Because the court refuses to reach constitutional issues needlessly, see Allen 406 F.3d at 946, and because neither State nor Intervenors are prejudiced by the proposed amendment, the court grants plaintiffs' motion (Docket 102) seeking leave to amend their complaint to withdraw their challenge to the constitutionality of section 7(1)(e)(i).

## II.      Terminate Intervention

Plaintiffs move to terminate Intervenors' intervention in this case. Specifically, plaintiffs contend that the constitutionality of section 7(2)(c)'s referral requirement provided the sole basis upon which the court granted intervention, and that this matter is no longer disputed.

Although plaintiffs' abandonment of their challenge to section 7(2)(c) moots the basis upon which the court previously granted intervention, Intervenors assert several other basis for intervention.  Because the court did not reach these alternative bases, it does so now.  For analysis purposes, the court combines the bases into two groups: (A) interest in obtaining statutory referrals; and (B) harm caused if section 7(1) is found false and misleading. Intervenors argue that these interests entitle them to intervention as a matter of right under Fed. R. Civ. P. 24(a).  Intervenors also seek in the alternative permissive intervention under Fed. R. Civ. P. 24(b).

### A.      Interest in Obtaining Statutory Referrals

Intervenors contend that they are entitled to intervention of right because they have an interest in obtaining referrals of new patients. Intervenors argue that this interest will, as a practical matter, be impaired if the court enjoins enforcement of section 7(1)(a), and in particular, the statutory requirement that physicians disclose to their patients:

> [t]hat the abortion will terminate the life of whole, separate, unique, living human being; [t]hat the pregnant woman has an existing relationship with that unborn human being and that the

11

> relationship enjoys protection under the United States
> Constitution and under the laws of South Dakota; [and] [t]hat by
> having an abortion, her existing relationship and her existing
> constitutional rights with regards to that relationship are
> terminated.

H.B. 1166, § 7(1)(b)-(d).  Intervenors argue that unless a pregnant woman is

provided this information, then it is unlikely that she will actively seek out a

pregnancy help center despite section 7(2)(c)'s requirement that the physician

disclose the name, address, and telephone number of a pregnancy help

center.  As such, Intervenors argue that the court's findings regarding the

constitutionality of section 7(1)(b)-(d) will, as a practical matter, impair

Intervenors' interest in obtaining referrals irrespective of the fact that

plaintiffs withdraw their objection to section 7(2)(c).

Before the court can determine whether this interest in fact warrants

intervention, however, the court must determine whether Intervenors have

Article III standing.  "The prospective intervenors [must] have Article III

standing to litigate their claims in federal court."  Mausolf v. Babbitt, 85 F.3d

1295, 1300 (8th Cir. 1996).  "To establish Article III standing, a [party] has the

burden of proving: (1) that he or she suffered an 'injury-in-fact,' (2) a causal

relationship between the injury and the challenged conduct, and (3) that the

injury likely will be redressed by a favorable decision."  Steger v. Franco, Inc.,

228 F.3d 889, 893 (8th Cir. 2000).  See also Lujan v. Defenders of Wildlife,

504 U.S. 555, 561-62, 112 S. Ct. 2130, 2137, 119 L. Ed. 2d 351 (1992).

Applicants must allege facts supporting each standing element.  See Shain v. Veneman, 376 F.3d 815, 818 (8th Cir. 2004).

"An injury in fact is a 'direct injury' resulting from the challenged conduct."  McClain v. Am. Econ. Ins. Co., 424 F.3d 728, 731 (8th Cir. 2005).  The proposed intervenor "must show that he or she 'sustained or is immediately in danger of sustaining some direct injury as the result of the challenged . . . conduct and [that] the injury or threat of injury [is] both real and immediate . . . .'"  Steger, 228 F.3d at 892 (alterations and omissions in original) (quoting City of Los Angeles v. Lyons, 461 U.S. 95, 102, 103 S. Ct. 1660, 75 L. Ed. 2d 675 (1983)).  Intervenors have standing if the court's decision will deny them a benefit.  See Oti Kaga, Inc. v. S.D. Hous. Dev. Auth., 342 F.3d 871, 878 (8th Cir. 2003) (holding that improper denial of tax credits was an injury-in-fact).

Here, the court finds that Intervenors satisfy the requirements of Article III standing.  Intervenors have an injury-in-fact because, as discussed below, they stand to lose referrals if the court finds that section 7(1)'s disclosure requirements are unconstitutional.  Intervenors presented specific evidence in the form of Jane Doe #1's affidavit that suggests women will not actually seek a pregnancy help center for counseling unless the disclosures contained in section 7(1) are provided to the women.  (Docket 119-1, at ¶ 89).  As such, this court's decision regarding the constitutionality of section 7(1) could

frustrate Intervenors' primary mission—counseling pregnant women who are considering an abortion.  This is sufficient injury in fact.  See Granville House, Inc. v. Dep't of Health & Human Servs., 715 F.2d 1292, 1298 (8th Cir. 1983) (stating that treatment center whose "primary mission" was to serve indigent patients had suffered an injury in fact when the denial of Medicaid coverage for the center's services reduced the number of indigent patients it could treat).  The court's decision also may prevent Intervenors from reaping the benefit of statutory referrals, which is an injury in fact.  See Oti Kaga, Inc., 342 F.3d at 878.  In addition, Intervenors argue a finding by the court that the disclosures in section 7(1) are unconstitutionally false and misleading will harm their reputation and impair their fundraising ability because Intervenors currently provide this information to women whom they counsel.  This injury to reputation may also satisfy the injury in fact requirement.  See Meese v. Keene, 481 U.S. 465, 473-74, 107 S. Ct. 1862, 1867-68, 95 L. Ed. 2d 415 (1987) (stating that harm to a politician's reputation was an injury in fact).  Accordingly, the court finds that Intervenors have alleged that they are in immediate danger of sustaining a "direct injury" if section 7(1) is enjoined.  See Steger, 228 F.3d at 892.

The final two standing elements are easily satisfied.  There is causal relationship between the constitutionality of section 7(1) and Intervenors' injury in fact because the alleged harms will only occur if the disclosures

14

contained in section 7(1) are no longer given.  And, if the court finds that section 7(1) is unconstitutional, the court will likely enjoin enforcement of section 7(1), making it unlikely that the disclosures will be given.  See S.D. Farm Bureau, Inc. v. South Dakota, 189 F.R.D. 560, 563 (D.S.D. 1999).  In addition, a favorable ruling will redress Intervenors' injuries because the statute will be enforceable and abortion providers will be required to provide the disclosures contained in section 7(1).  Accordingly, Intervenors satisfy all three elements of Article III standing.

Next, the court will determine whether Intervenors' interest in referrals entitles them to intervention as a matter of right under Fed. R. Civ. P. 24(a). Intervention of right under Rule 24(a):

> requires that one seeking intervention file a timely application, and that the applicant then satisfy a tripartite test: 1) the party must have a recognized interest in the subject matter of the litigation; 2) that interest must be one that might be impaired by the disposition of the litigation; and 3) the interest must not be adequately protected by the existing parties.

Mille Lacs Band of Chippewa Indians v. Minnesota, 989 F.2d 994, 997 (8th Cir. 1993).  Rule 24(a) is construed liberally and the court "resolve[s] any doubts in favor of the proposed intervenors." Kan. Pub. Employees Ret. Sys. v. Reimer & Koger Assocs., Inc., 60 F.3d 1304, 1308 (8th Cir. 1995).

### 1.      Timeliness of Motion

The court found that Intervenors' motion to intervene was timely in the court's previous order granting intervention.  (Docket 69).  Plaintiffs do not

dispute this finding, and the court finds that Intervenors have satisfied this requirement.

### 2.    Intervenors' Interest

"[The] interest identified must be more than peripheral or insubstantial; the applicant must assert a 'significantly protectable interest.'" <u>Planned Parenthood of Minn., Inc. v. Citizens for Cmty. Action</u>, 558 F.2d 861, 869 (8th Cir. 1977). "Although the intervenor cannot rely on an interest that is wholly remote and speculative, the intervention may be based on an interest that is contingent upon the outcome of the litigation." <u>United States v. Union Elec. Co.</u>, 64 F.3d 1152, 1162 (8th Cir. 1995). The interest test is construed broadly, and all parties affected by the litigation should be included if practicable. See <u>id.</u> ("The court should be mindful that '[t]he interest test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned parties as is compatible with efficiency and due process.'"); <u>see also</u> 7C Wright & Miller, § 1908, at 284-85 (2d ed. 1986) (suggesting that the impairment prong and the adequate representation prong, rather than the interest prong, should be the primary vehicles for limiting intervention).

Intervenors claim that they have a protectable interest in obtaining statutory referrals of women who are seeking counseling. The court recognized this interest in its previous order because Intervenors' primary

mission is counseling pregnant women, and because Dr. Ridder has been retained to perform additional services by the women that he previously counseled at the Alpha Center.  (Docket 69).  Nothing has changed, and this interest satisfies Rule 24(a)'s interest prong.

### 2.    Impairment of Intervenors' Interest

"Rule 24(a)(2) requires only that disposition of the action 'may as a practical matter impair or impede the applicant's ability to protect [its] interest.'" Kan. Pub. Employees Ret. Sys., 60 F.3d at 1307 (alteration in original) (quoting Mille Lacs Band of Chippewa Indians, 989 F.2d at 998). Applicants "need not show that, but for its intervention, its interest 'would be' impaired by the operation of res judicata, collateral estoppel, or stare decisis, but rather that its interest 'may be so impaired.'" Id. at 1308.  "[T]he potential for a negative stare decisis effect 'may supply that practical disadvantage which warrants intervention of right.'" Stone v. First Union Corp., 371 F.3d 1305, 1309-10 (11th Cir. 2004) (emphasis in original) (quoting Chiles v. Thornburgh, 865 F.2d 1197, 1214 (11th Cir. 1989)).  The court must consider the practical impact of the litigation as a whole on applicants' interest.  South Dakota v. Ubbelohde, 330 F.3d 1014, 1024-25 (8th Cir. 2003).

The issue of impairment of Intervenors' interest in obtaining statutory referrals presents a more difficult question.  Before, when plaintiffs were challenging section 7(2)(c)'s referral requirement, it was easy to see how the

litigation could, as a practical matter, impair Intervenors' interest in obtaining referrals, because if the court found that portion of the statute unconstitutional, then the court would likely have enjoined enforcement of the referral requirement.  This in turn would directly harm Intervenors because abortion physicians would no longer be required to provide contact information for pregnancy crisis centers, such as Intervenors.  (Docket 69). As noted above, however, plaintiffs have abandoned this claim.

Intervenors now argue that their interest in obtaining referrals would, as practical matter, be impaired if the court finds that section 7(1) is unconstitutional and enjoins its enforcement.  Intervenors argue that pregnant women will only seek counseling if provided the additional information required to be disclosed by section 7(1).  In support of their argument, plaintiffs offer the affidavit of Jane Doe #1.  Doe is a young woman who had an abortion under the current informed consent statute.  Doe states that if she would have been "given the information contained in [H.B. 1166] in person, and [she] got to ask questions and [her] questions were answered, [she] would have run out of the Planned Parenthood Clinic and [she] would have gone to Alpha Center to see how they could help [her]."  (Docket 119-1, at ¶ 89).  Doe also states that she would not have sought out Alpha Center without the additional disclosures in section 7(1) even if provided the name, address, and telephone number of Alpha Center as required by section

7(2)(c)'s referral requirement.  (Id.).  Doe compares section 7(2)(c)'s referral requirement, without the information contained in section 7(1), to the information that she received over the telephone informing her that the State of South Dakota had written materials describing fetal growth and development available to her.  (Id.).  Doe apparently did not seek this written material.  Doe's affidavit suggests that mere recitation of the Intervenors' name, address, and phone number as required by section 7(2)(c) will not significantly increase the number of pregnant women that seek counseling from Intervenors.

Intervenors also provide evidence that few woman obtain the written material provided by the State of South Dakota even though the current informed consent statute requires physicians to inform women that this information is available.  See SDCL 34-23A-10.1(2)(d), 34-23-10.3.  In 2004, of 814 abortions that were performed, 757 declined the information.  (Docket 123-13 at 11; Docket 147 at 15).  Intervenors argue, and Doe's affidavit supports, the analogy between this written information and the referral requirement under section 7(2)(c).  Intervenors contend that unless the additional information in section 7(1) is disclosed, then few women will actually use the referral information from section 7(2)(c) and seek out a pregnancy help center like Intervenors.

The court finds that Intervenors have carried their burden of establishing that the outcome of this litigation may, as practical matter, impair their interest in obtaining statutory referrals to counsel women.  If the court finds that section 7(1) violates the U.S. Constitution, then the court likely will enjoin enforcement.  If so, then plaintiffs will no longer be statutorily required to provide the information in section 7(1).  Further, plaintiffs, who argue that this information is false and misleading, likely will not provide these disclosures unless statutorily required to do so.  Thus, unless section 7(1) is enforced, few women will receive the disclosures contained in section 7(1), which in turn means few will seek counseling at a pregnancy crisis center.

### 3.   Adequacy of Representation

The final requirement of Rule 24(a) prohibits intervention of right if "the [Intervenors'] interest is adequately represented by existing parties."  The adequacy of representation is determined "'by comparing the interests of the proposed intervenor with the interests of the current parties to the action.'" Little Rock Sch. Dist. v. N. Little Rock Sch. Dist., 378 F.3d 774, 780 (8th Cir. 2004) (quoting Sierra Club v. Robertson, 960 F.2d 83, 86 (8th Cir. 1992)). "Typically, persons seeking intervention need only carry a 'minimal' burden of showing that their interests are inadequately represented by existing parties." Mille Lacs Band of Chippewa Indians, 989 F.2d at 999.  "But when one of the

parties is an arm or agency of the government, and the case concerns a matter of 'sovereign interest,' the bar is raised, because <u>in such cases</u> the government is 'presumed to represent the interests of all its citizens.'" <u>Mausolf</u>, 85 F.3d at 1303 (emphasis in original) (quoting <u>Union Elec. Co.</u>, 64 F.3d at 1168-69).  The applicant can rebut this presumption "by showing that its interests actually differ from or conflict with the government's interests." <u>South Dakota ex rel. Barnett v. U.S. Dep't of Interior</u>, 317 F.3d 783, 786 (8th Cir. 2003).  Applicants must identify an actual or probable conflict between their interest and the government's intererst; mere theoretical conflict is insufficient.  <u>See</u> <u>id.</u>

Here, the presumption that State adequately represents Intervenors' interest is triggered because this case concerns a matter of sovereign interest, namely public health.  <u>See</u> <u>Chiglo v. City of Preston</u>, 104 F.3d 185, 188 (8th Cir. 1997) (holding that presumption was created when the state litigated in case involving its interest in public health).  As such, Intervenors bear the burden of showing that their interest in referrals is different from or conflicts with State's interest.  <u>See</u> <u>South Dakota ex rel. Barnett</u>, 317 F.3d at 786.

Intervenors argue that their interest in obtaining patient referrals is different than State's interest.  In its previous order granting intervention, the court found that State did not adequately represent the Intervenor's  interest in obtaining referrals.  (Docket 69).  That finding, however, was explicitly

21

limited to plaintiffs' challenge of section 7(2)(c)'s referral requirement.  As noted, the court determined that State's interest was guaranteeing that women obtained all relevant information before choosing an abortion.  The court found that State did not, however, have an interest in who provided this information.  As such, State could have chosen to provide the information itself rather than promoting referrals to Intervenors, and State may not have vigorously litigated section 7(2)(c)'s statutory referral requirement.

Now that plaintiffs have abandoned their challenge to section 7(2)(c)'s referral requirement, however, the court finds that State adequately represents Intervenors' referral interest.  According to the legislature's findings, State's interest in enforcement of H.B. 1166 is ensuring that pregnant women obtain "complete and accurate information and adequate time to understand and consider that information to make a fully informed and voluntary consent" before having an abortion.  H.B. 1166, § 3.  In addition, the legislature made findings on what constitutes "complete and accurate information."  The legislature explicitly found that an abortion "terminate[s] the life of a whole, separate, unique, living human being."  The legislature also found that "a pregnant woman and her unborn child" have an existing relationship.  These factual findings are incorporated in the mandatory disclosures contained in section 7(1).  In light of the legislature's finding that women should be provided all truthful information as well as its

22

finding that the foregoing statements are truthful, State's interest can be described as ensuring that women are provided the disclosures contained in section 7(1) by guaranteeing enforcement of section 7(1).

Because State's interest is the enforcement of section 7(1), the court finds that State adequately represents Intervenors' interest in obtaining statutory referrals.  This finding is guided by the Eighth Circuit's decision in Curry v. Regents of the University of Minnesota, 167 F.3d 420 (8th Cir. 1999). In Curry, students at the University of Minnesota filed a complaint against the Regents of the University of Minnesota (University).  The complaint challenged a University policy that mandated all students to pay fees that were distributed to student organizations.  The student-plaintiffs argued that the mandatory fee system violated their constitutional rights to the extent the fees were used to fund organizations that have viewpoints inconsistent with their views.  The student-plaintiffs objected to three specific student organizations.  These three student organizations tried to intervene, arguing that if the mandatory fee system was struck down, then their funding would decrease, thereby impairing their interest in engaging in expressive activities.

The Eighth Circuit held that the student organizations could not intervene as of right under Rule 24(a) because, among other reasons, the University adequately represented the student organization's interests. Although the student organization groups argued that their interest in

23

obtaining funding to promote expressive activity was different than the University's interest in upholding the mandatory fee system, the court disagreed.  The court held that "although the [student organizations'] motives may be distinguishable from the University's, [the student organizations'] and the University's interests are the same:  both want the current fee system upheld."  Id. at 423.  The court reached this conclusion because the student organizations' interest in obtaining funding for expressive activity could only be impaired if the mandatory fee system was struck down.

Curry is analytically identical to this case.  Intervenors and State attempt to distinguish their interests by claiming that Intervenors have an interest in obtaining referrals while State has an interest in providing truthful information to women.  As noted above, however, State's interest in providing truthful information is properly equated with an interest in enforcing section 7(1)'s disclosure requirements because these disclosures incorporate what the legislature has found to be the "truth."  The Intervenors in this case have the same interest in enforcing section 7(1) because Intervenors' referral interest will only be impaired if these disclosures are not given to women.  In short, even though Intervenors and State have different motivations, their interests in the litigation are the same: enforcing the disclosure requirements of section 7(1).  As such, Intervenors have not carried their burden of rebutting the presumption that State adequately represents their interests.

In sum, the court finds that State's and Intervenors' interests are identical.  Further, there is no indication that State is failing to vigorously defend the constitutionality of section 7(1).  See Mausolf, 85 F.3d at 1303. (holding that the presumption of adequate representation is rebutted when the Government shirks its duty to protect the interests of its citizens). Accordingly, the court finds that State adequately represents Intervenors' referral interest, which means that the Intervenors are not entitled to intervention of right based upon their referral interest.

**B.      Harm Caused If Section 7(1) Is Found False and Misleading**

Intervenors also argue that the are entitled to intervene as a matter of right because they currently tell women that "(1) an abortion will terminate the life of a whole, unique, living human being; (2) that the unborn child and his or her mother have an existing relationship that would be terminated by an abortion; and (3) that an abortion subjects a woman to increased risk of depression, suicidal thoughts and suicidal behavior."  (Docket 46, at 6; Docket 45-2, at ¶ 13; Docket 45-3, at ¶¶ 11-12; Docket 45-4, at ¶¶ 11-12; Docket 45-5, at ¶ 5).  Because Intervenors currently provide these disclosures, which are identical to the challenged disclosures contained in section 7(1), Intervenors argue that they will be harmed if the court finds that these disclosures are false and misleading.  Specifically, Intervenors argue that this finding would harm them in five ways: (1) potentially subjecting

25

them to liability for former clients; (2) requiring them to change their counseling practices to avoid future liability; (3) harming their reputation for truthfulness, which in turn will hamper their ability to fund raise; (4) calling into question the purpose for their programs; and (5) infringing upon their First Amendment rights by forcing them to counsel women in an untruthful manner.  Additionally, Dr. Ridder and Larsen claim they may be subjected to disciplinary action for stating false and misleading information.

Even if these alleged harms give Intervenors a protectable interest in the litigation, Intervenors are not entitled to intervention as a matter of right because State adequately represents Intervenors' interest in litigating the issue of whether the disclosures in section 7(1) are false and misleading. Intervenors argue that they have a narrower, more parochial interest because State likely was not considering their liability and their free speech interests when it adopted section 7(1)'s disclosure requirements.  Instead, State wanted to guarantee that pregnant women receive all relevant, truthful information before making deciding whether to have an abortion.

The court rejects Intervenors' contention that they have a narrower, more parochial interest.  As noted above, State's interest is in enforcing section 7(1)'s disclosure.  By implication, this means proving that the disclosures are not unconstitutionally false and misleading.  Intervenors have the exact same interest because the harm experienced by Intervenors is

premised on a finding by the court that section 7(1) is false and misleading. See Curry, 167 F.3d at 423.  The court thus finds that Intervenors have not rebutted the presumption that State adequately represents Intervenors' interest.  As such, Intervenors are not entitled to intervention as a matter of right under Fed. R. Civ. 24(a).

### C.    Permissive Intervention

Alternatively, applicants seek permissive intervention under Rule 24(b)(2).  Rule 24(b) permits the court to grant intervention upon a timely motion to intervene when the applicant has "a question of law or fact in common" with the underlying litigation.  Whether to grant permissive intervention rests within the court's discretion.  South Dakota ex rel. Barnett, 317 F.3d at 788.  "The principal consideration in ruling on a 24(b) motion is whether the proposed intervention would unduly delay or prejudice the adjudication of the parties' rights."  Id. at 787.

As noted above, Intervenors moved for intervention in a timely matter. Additionally, Intervenors have a question of law, namely the constitutionality of section 7(1), in common with the underlying litigation.  Accordingly, the only issue is whether the proposed intervention will cause undue delay or prejudice.

Here, the court finds that permissive intervention is inappropriate. First, the court notes that Intervenors' answer and State's answer proposed

identical theories of defense, and Intervenors' participation adds nothing new to the litigation.  (Docket 36; Docket 75).  In addition, the discovery and motions practice in this case has indicated that Intervenors unduly delay the litigation by unreasonably duplicating the efforts of State.  This pattern likely will continue, and perhaps get worse, as the case gets closer to and during the trial.  As such, the court refuses to exercise its discretion by granting intervention when it will "only be a source of repetition and delay."  Standard Heating & Air Conditioning Co. v. City of Minneapolis, 137 F.3d 567, 573 (8th Cir. 1998).  The court's decision is affirmed by the fact that State adequately represents Intervenors' interests in the case.  See South Dakota ex rel. Barnett, 317 F.3d at 788 ("Although the adequacy of protection is only a minor variable in the Rule 24(b) decision calculus, it is not an illegitimate consideration.").  The court acknowledges that it previously granted permissive intervention in the alternative.  The development of this case, however, has indicated that intervention has only resulted in unnecessary duplication.  As such, the court finds that permissive intervention under Fed. R. Civ. P. 24(b) is inappropriate, and thus, plaintiffs' motion to terminate intervention is granted.[2]

---

[2] The denial of intervention in no way impairs Intervenors' ability to file a proper amicus curiae brief.

### III.    Strike Expert Testimony of T. Murphy Goodwin, M.D.

State[3] seeks to substitute the expert testimony of Dr. T. Murphy Goodwin for the expert testimony of Dr. Bernard Nathanson.  Plaintiffs move to exclude the testimony of Dr. Goodwin and argue that the designation of Dr. Goodwin was untimely.

Fed. R. Civ. P. 26(a)(2)(B) imposes an affirmative duty upon the party proffering expert testimony to disclose a written report containing, among other things, the expert's opinions.  Rule 26(a)(2)(C) requires that "[t]hese disclosures shall be made at the times and in the sequence directed by the court" if the court has issued an order governing their disclosure.

Failure to disclose an expert's report triggers sanctions: "A party that without substantial justification fails to disclose information required by rule 26(a) . . . is not, unless such failure is harmless, permitted to use as evidence at trial, at a hearing, or on a motion any witness or information not so disclosed."  Fed. R. Civ. P. 37(c)(1); see also N. Star. Mut. Ins. Co. v. Zurich Ins. Co., 269 F. Supp. 2d 1140, 1145 (D. Minn. 2003) (stating that Rule 37(c)(1) sanctions apply if the party fails to disclose a Rule 26(a)(2) expert report in a timely manner).  Failure to disclose in a timely manner "is equivalent to failure to disclose," and thus, Rule 37 sanctions apply.  Trost v. Trek Bicycle Corp., 162 F.3d 1004, 1008 (8th Cir. 1998).  "'While sanctions

---

[3] Intervenors also move to substitute Dr. Goodwin for Dr. Nathanson. The court's ruling terminating intervention moots Intervenors' motion, however.

under Rule 37(c)(1) are mandatory . . . exclusion of evidence should not apply if the offending party's failure was substantially justified or if the failure was harmless.'" Transclean Corp. v. Bridgewood Servs., Inc., 101 F. Supp. 2d 788, 795 (D. Minn. 2000) (quoting Transclean Corp. v. Bridgewood Servs., Inc., 77 F. Supp. 2d 1045, 1064 (D. Minn. 1999)).  Four factors guide the court in determining whether to exclude untimely disclosed expert testimony: (1) the importance of the excluded testimony; (2) the offending party's explanation for failure to disclose in a timely manner; (3) the potential prejudice of permitting use of the untimely disclosed testimony; and (4) the ability to cure any prejudice by granting a continuance.  See id.  The court has discretion in deciding whether to exclude expert testimony that is not disclosed in a untimely manner.  See Sylla-Sawdon v. Uniroyal Goodrich Tire Co., 47 F.3d 277, 284 (8th Cir. 1995).

Here, the court excludes Dr. Goodwin's proffered expert testimony. First, Intervenors cannot admit Dr. Goodwin's testimony because, as indicated above, the court has terminated Intervenors' intervention so they are no longer a party to the action.  Nor can the State admit Dr. Goodwin's testimony because State has not designated Dr. Goodwin as one of its experts.[4]  Even if State did designate Dr. Goodwin as an expert, State failed to

---

[4] Intervenors designated Dr. Goodwin as an expert and disclosed his expert report on April 20, 2006.  (Docket 101-1).  State, however, did not join in the designation of Dr. Goodwin.

disclose Dr. Goodwin's expert report by the court's deadline for rebuttal expert reports on November 28, 2005.  (Docket 73).  This failure to timely disclose Dr. Goodwin's report means that the court must exclude Dr. Goodwin's report unless the failure to timely disclose was harmless or substantially justified.  See Transclean Corp., 101 F. Supp. 2d at 795.

After considering the four factors discussed above, the court finds that State's failure to disclose Dr. Goodwin's report was neither harmless nor substantially justified.  Regarding the first factor, the court finds that Dr. Goodwin's testimony will not significantly aid the court in determining the issues in this case.  Notably, State has never designated Dr. Goodwin as an expert, which indicates that State does not consider Dr. Goodwin's testimony particularly helpful.  In addition, the court has reviewed Dr. Goodwin's report and finds that most, if not all, of his testimony duplicates opinions that are already covered by State's eleven other experts.  (Docket 77; Docket 78; Docket 79; Docket 82; Docket 85; Docket 111).  Accordingly, this factor weighs in favor of excluding Dr. Goodwin's testimony.

The second factor requires the court to consider State's explanation for failure to disclose Dr. Goodwin's report.  As an initial matter, the court notes that Intervenors proposed to substitute Dr. Goodwin's testimony for the expert testimony of Dr. Nathanson because Dr. Nathanson's health has recently deteriorated to the point that he can no longer testify in this case.

The court finds that this is a reasonable explanation for why Intervenors waited until April 20, 2006, to designate Dr. Goodwin as an expert and to disclose his opinion.  State, however, cannot rely on this explanation, because State still has not designated Dr. Goodwin as an expert despite being aware for nearly three months that Dr. Nathanson is unavailable to testify. Cf. N. Star Mut. Ins. Co., 269 F. Supp. 2d at 1145 (stating that defendant's confusion regarding the court's scheduling order was not a reasonable excuse for failure to disclose because even if defendant was reasonably confused, defendant waited over four months to disclose the report).  State has provided no explanation for why it has not designated Dr. Goodwin as an expert, and thus, this factor weighs against admitting Dr. Goodwin's expert testimony.

The third factor also weighs against permitting Dr. Goodwin to testify. If the court were to allow Dr. Goodwin to testify, plaintiffs would be prejudiced.  Although a trial date has not been set, discovery has closed in this case.  (Docket 100)  In addition, the deadline for filing dispositive motions has passed.  (Docket 135).  If the court were to permit Dr. Goodwin to testify, then the court would have to reopen discovery so that plaintiffs could depose Dr. Goodwin.  In addition, the court would have to permit the parties to supplement their summary judgment submissions depending on the substance of Dr. Goodwin's testimony.  All of this will cause unnecessary delay and will prejudice the plaintiffs who complied with the court's discovery

orders.  See Engleson v. Little Falls Area Chamber of Commerce, 210 F.R.D. 667, 672 (D. Minn. 2002) (finding that delay was prejudicial particularly when the undisclosed expert's testimony would not substantially assist the jury).

Finally, the court finds that granting a continuance will not be able to alleviate the prejudice incurred by plaintiffs.  A continuance will enable plaintiffs to perform discovery.  The delay attributed to the reopening of discovery, however, is the very prejudice experienced by plaintiffs.  And, a continuance will do nothing but further contribute to this prejudice.  See Transclean Corp. v. Bridgewood Servs., Inc., 77 F. Supp. 2d 1045, 1064 (D. Minn. 1999) ("Although a continuance, and a reopening of discovery, might alleviate some of the prejudice inflicted by unfair surprise, such a remedy would wreak its own distinctive prejudice, by unnecessarily prolonging the pretrial processing of Plaintiffs' claims, with the attendant expense of further discovery, and prolonged Motion practice."), vacated on other grounds by 290 F.3d 1364 (Fed. Cir. 2002).

Accordingly, after considering the appropriate factors, the court finds that State's failure to timely disclose the expert report of Dr. Goodwin is neither harmless nor substantially justified.  Thus, the court excludes his testimony under Fed. R. Civ. P. 37(c)(1).  In any event, State has not yet designated Dr. Murphy as an expert.  As such, plaintiffs' motion (Docket 109)

33

to exclude the testimony of Dr. Goodwin is granted.  In addition, State's motion (Docket 106) to extend the deadline for discovery is denied, and Intervenors' motion (Docket 106) to extend the deadline for discovery is denied as moot.

## IV.  Motion to Compel Production of Documents

Intervenors move to compel plaintiffs to comply with their informal request for production of documents.  State joins the motion to compel.  The court finds that the motion is moot, however, because State never joined Intervenors' informal request for production.  (Docket 107-6).  As such, Intervenors are the only party seeking discovery.  They, however, are no longer a party to the action, and thus, are not entitled to enforce a request for production.  See Fed. R. Civ. P. 34(a).  Accordingly, Intervenors' and State's motion (Docket 106) to compel is denied.

## V.  Motion to Compel Deposition of Teresa Oxen

Intervenors and State jointly move to compel the completion of the deposition of Teresa Oxen.  The parties have apparently reached an agreement regarding rescheduling of this deposition.  Thus, this motion (Docket 106) is denied as moot.

## VI.  Intervenors' Motion for Partial Summary Judgment

Intervenors move for partial summary judgment.  State has not joined this motion.  Because the court has terminated intervention above,

Intervenors' motion (Docket 139) for partial summary judgment is denied as moot.

Based on the foregoing, it is hereby

ORDERED that plaintiffs' motion (Docket 102) to amend their complaint is granted with the conditions described herein.  Plaintiffs shall file their amended complaint by **August 10, 2006.**

IT IS FURTHER ORDERED that plaintiffs' motion (Docket 102) to terminate intervention is granted.

IT IS FURTHER ORDERED that plaintiffs' motion (Docket 109) to exclude testimony of late-disclosed expert is granted.

IT IS FURTHER ORDERED that State's and Intervenors' joint motion (Docket 106) to extend deadlines and order discovery is denied in part and denied as moot in part as described herein.

IT IS FURTHER ORDERED that Intervenors' motion (Docket 139) for partial summary judgment is denied as moot.

Dated July 26, 2006.

BY THE COURT:


/s/ *Karen E. Schreier*
KAREN E. SCHREIER
CHIEF JUDGE

35