UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| PLANNED PARENTHOOD MINNESOTA, NORTH DAKOTA, SOUTH DAKOTA; and CAROL E. BALL, M.D., | ) ) ) ) ) | CIV. 05-4077-KES |
| Plaintiffs, | ) ) | **AMENDED** ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION |
| vs. | ) ) ) | |
| MIKE ROUNDS, Governor, and LARRY LONG, Attorney General, in their official capacities, | ) ) ) ) | |
| Defendants. | ) | |

Plaintiffs, Planned Parenthood Minnesota, North Dakota, South Dakota and Carol E. Ball, M.D., move for a preliminary injunction preventing amendments to South Dakota Codified Laws 34-23A-10.1 from going into effect on July 1, 2005. Plaintiffs allege that the amendments (34-23A-10.1 (1)(b), (1)(c), (1)(d), (1)(e) and (2)) violate the First and Fourteenth Amendments of the United States Constitution. Defendants, Governor Mike Rounds and Attorney General Larry Long, oppose the motion. Plaintiffs' motion for preliminary injunction is granted.

## BACKGROUND

Unless there is a medical emergency, no abortion may be performed in South Dakota without the voluntary and informed consent of the patient.

SDCL 34-23A-10.1.  Consent is informed only if the patient is told the name of the physician who will perform the abortion, the medical risks associated with the procedure, the probable gestational age of the unborn child, the medical risks associated with carrying her child to term, that medical assistance benefits may be available, that the father is liable to assist in supporting the child, and that she has the right to review printed materials provided by the state of South Dakota and a website.  Id.  The patient must then sign an informed consent certification.  Id.

In 2005, the South Dakota Legislature passed House Bill 1166 to expand the physician disclosure requirements.  H.B. 1166 (S.D. 2005).  Legislative findings include the following:

> Section 1. The Legislature finds that all abortions, whether surgically or chemically induced, terminate the life of a whole, separate, unique, living human being.
>
> Section 2. The Legislature finds that there is an existing relationship between a pregnant woman and her unborn child during the entire period of gestation.
>
> Section 3. The Legislature finds that procedures terminating the life of an unborn child impose risks to the life and health of the pregnant woman.  The Legislature further finds that a woman seeking to terminate the life of her unborn child may be subject to pressures which can cause an emotional crisis, undue reliance on the advice of others, clouded judgment, and a willingness to violate conscience to avoid those pressures.  The Legislature therefore finds that great care should be taken to provide a woman seeking to terminate the life of her unborn child and her own constitutionally protected interest in her relationship with her child with complete and accurate information and adequate time to understand and consider that information in order to make a

>fully informed and voluntary consent to the termination of either or both.
>
>Section 4. The Legislature finds that pregnant women contemplating the termination of their right to their relationship with their unborn children, including women contemplating such termination by an abortion procedure, are faced with making a profound decision most often under stress and pressures from circumstances and from other persons, and that there exists a need for special protection of the rights of such pregnant women, and that the State of South Dakota has a compelling interest in providing such protection.

<u>Id.</u>

If the law goes into effect as scheduled on July 1, 2005, no abortion may be performed in South Dakota unless the following requirements, in pertinent part, are met:

>No abortion may be performed unless the physician first obtains a voluntary and informed written consent of the pregnant woman upon whom the physician intends to perform the abortion, unless the physician determines that obtaining an informed consent is impossible due to a medical emergency and further determines that delaying [sic] in performing the procedure until an informed consent can be obtained from the pregnant woman or her next of kin in accordance with chapter 34-12C is impossible due to the medical emergency, which determinations shall then be documented in the medical records of the patient. A consent to an abortion is not voluntary and informed, unless, in addition to any other information that must be disclosed under the common law doctrine, the physician provides that pregnant woman with the following information:
>
>(1) A statement in writing providing the following information:
>
>> \* \* \*
>>
>> (b) That the abortion will terminate the life of a whole, separate, unique, living human being;

3

    (c)    That the pregnant woman has an existing relationship with that unborn human being and that the relationship enjoys protection under the United States Constitution and under the laws of South Dakota;

    (d)    That by having an abortion, her existing relationship and her existing constitutional rights with regards to that relationship will be terminated;

    (e)    A description of all known medical risks of the procedure and statistically significant risk factors to which the pregnant woman would be subjected, including:

        (i)    Depression and related psychological distress;

        (ii)    Increased risk of suicide ideation and suicide;

    \* \* \*

The disclosures set forth above shall be provided to the pregnant woman in writing and in person no later than two hours before the procedure is to be performed. The physician shall ensure that the pregnant woman signs each page of the written disclosure with the certification that she has read and understands all of the disclosures, prior to the patient signing a consent for the procedure. If the pregnant woman asks for a clarification or explanation of any particular disclosure, or asks any other question about a matter of significance to her, the explanation or answer shall be made in writing and be given to the pregnant woman before signing a consent for the procedure and shall be made part of the permanent medical record of the patient;

(2) A statement by telephone or in person, by the physician who is to perform the abortion, or by the referring physician, or by an agent of both, at least twenty-four hours before the abortion, providing the following information:

    \* \* \*

    (c)    The name, address, and telephone number of a pregnancy help center in reasonable proximity of the abortion facility where the abortion will be performed; and

> \* \* \*
>
> Prior to the pregnant woman signing a consent to the abortion, she shall sign a written statement that indicates that the requirements of this section have been complied with. Prior to the performance of the abortion, the physician who is to perform the abortion shall receive a copy of the written disclosure documents required by this section, and shall certify in writing that all of the information described in those subdivisions has been provided to the pregnant woman, that the physician is, to the best of his or her ability, satisfied that the pregnant woman has read the materials which are required to be disclosed, and that the physician believes she understands the information imparted.

H.B. 1166. SDCL 34-23A-10.2 provides in pertinent part that a physician who, knowingly or in reckless disregard, violates SDCL 34-23A-10.1 is guilty of a class 2 misdemeanor.

Plaintiffs contend that requiring abortion providers to notify their patients that "the abortion will terminate the life of a whole, separate, unique, living human being" and the notifications regarding the existing relationship and the relationship termination language violate the United States Constitution. Plaintiffs also object to the physician's certification that he or she is satisfied "that the pregnant woman has read" the state-mandated disclosures and that "the physician believes she understands the information imparted." Plaintiffs believe the amended notice law forces abortion providers to articulate the state's abortion ideology and philosophical beliefs about abortion, in violation of their First and Fourteenth Amendment rights. Plaintiffs also allege that the notice requirements violate the First and

Fourteenth Amendment rights of pregnant women by forcing them to listen to and understand the state's anti-abortion views.  Plaintiffs further allege that forcing women to receive and understand untrue, misleading information about abortion violates their right to privacy and liberty protected by the Fourteenth Amendment, and constitutes an undue burden on their right to choose abortion.  Plaintiffs also contend that several provisions in the statute are impermissibly vague in violation of the due process clause of the Fourteenth Amendment and that the health exception is inadequate.  Defendants Rounds and Long oppose the motion for preliminary injunction.

## DISCUSSION

When ruling on a motion for a preliminary injunction, the court must consider (1) the likelihood of success on the merits; (2) the threat of irreparable harm to the moving party; (3) balancing this harm with any injury an injunction would inflict on other interested parties; and (4) the effect on the public interest.  Dataphase Sys., Inc. v. C L Sys., Inc., 640 F.2d 109, 113 (8th Cir. 1981).  "No single factor is dispositive; rather, each factor must be considered to determine whether the balance of equities weighs toward granting the injunction."  United Indus. Corp. v. Clorox Co., 140 F.3d 1175, 1179 (8th Cir. 1998).

### 1. Success on the Merits

The moving party need not demonstrate a mathematical probability of success on the merits, such as greater than 50 percent. Heartland Academy Cmty. Church v. Waddle, 335 F.3d 684, 690 (8th Cir. 2003). Rather, the movant must have a "fair chance of prevailing" after discovery, formal procedures, complete evidence, and a full trial on the merits. Id.

Plaintiffs allege that the informed consent provisions force abortion doctors to convey messages that they disagree with, in violation of the "compelled speech" line of First Amendment cases. The right of freedom of thought protected by the First Amendment includes both the right to speak freely and the right to refrain from speaking. Wooley v. Maynard, 430 U.S. 705, 714, 97 S. Ct. 1428, 51 L. Ed. 2d 752 (1977). The State may not require an individual to participate in the dissemination of an ideological message. Id. (affirming injunction against enforcement of state law making it a crime to obscure the words "Live Free or Die" on New Hampshire license plates). See also West Virginia State Board of Ed. v. Barnette, 319 U.S. 624, 642, 63 S. Ct. 1178, 87 L. Ed. 1628 (1943) (affirming injunction against law requiring schoolchildren to salute the American flag).

Informed consent statutes implicate the physician's First Amendment right not to speak, but only as part of the practice of medicine, which is subject to reasonable licensing and regulation by the state. Planned

7

Parenthood of Southeast Pennsylvania v. Casey, 505 U.S. 833, 884, 112 S. Ct. 2791, 120 L. Ed. 2d 674 (1992) (citing Wooley, 430 U.S. 705, and Whalen v. Roe, 429 U.S. 589, 603, 97 S. Ct. 869, 51 L. Ed. 2d 64 (1977). "If the information the State requires to be made available to the woman is truthful and not misleading, the requirement may be permissible." Casey, 505 U.S. at 882 (emphasis added). Informed consent provisions may violate the First Amendment rights of physicians if the state requires the doctor to communicate its ideology. Akron v. Akron Center for Reproductive Health, Inc., 462 U.S. 416, 472 n.16, 103 S. Ct. 2481, 76 L. Ed. 2d 687 (1983) (O'Connor, J., dissenting).[1]

In Casey, the Court upheld provisions of a Pennsylvania abortion statute that outlawed abortion in the absence of informed consent. Id. at 882-884. Pursuant to the Pennsylvania abortion statute, consent to an abortion was voluntary and informed only if "[a]t least 24 hours prior to the abortion, the physician who is to perform the abortion has orally informed the woman of the nature of the proposed procedure or treatment and of those risks and alternatives to the procedure or treatment that a reasonable patient would

---

[1] In Akron, the City conceded that the following provisions of an informed consent law were unconstitutional: a provision requiring doctors to inform women seeking abortion that the unborn child was a human being from the moment of conception, that the unborn child may be viable and that if so, the doctor had a legal responsibility to try to save the child, and that abortion can result in serious physical and psychological complications. Akron, 462 U.S. at 471. Thus, the court did not reach the issue of whether these provisions violated the constitution.

consider material to the decision of whether or not to undergo the abortion." Casey, 505 U.S. at 902. Id. The doctor had to describe the "probable gestational age of the unborn child at the time the abortion is to be performed" and the "medical risks associated with carrying her child to term." Id. The doctor (or a qualified technician or social worker) was also required to inform the patient that the state published printed materials describing the unborn child and listing agencies that offer alternatives to abortion, and that free copies were available. Id. The statute required the doctor to inform the woman that the father was liable for child support payments. Id. The woman seeking an abortion had to certify in writing that the required information had been provided to her. Id. The Court found that requiring a doctor to give a woman certain information as part of obtaining her consent to an abortion was no different from requiring a doctor to give specific information about any medical procedure, and found "no constitutional infirmity in the requirement that the physician provide the information mandated by the State here." Casey, 505 U.S. at 883-84.

    The amendments to the South Dakota informed consent provisions go much further than the informed consent statute upheld in Casey and other cases reviewing similar statutes, and force abortion doctors to inform women that abortion will "terminate the life of a whole, separate, unique, living human being" and will terminate her relationship with that human being. The

9

State of South Dakota may express its preference for childbirth over abortion by requiring that a woman be informed of the <u>availability</u> of information related to fetal development and the assistance available to her if she decides to carry the pregnancy to full term, and may require doctors to give this information to a woman seeking abortion.  See <u>Casey</u>, 505 U.S. at 883-84 (emphasis added). South Dakota may not, however, violate the First Amendment rights of abortion providers by compelling them to espouse the State's ideology.  See <u>Wooley</u>, 430 U.S. at 714.  Unlike the truthful, non-misleading medical and legal information doctors were required to disclose in <u>Casey</u>, the South Dakota statute requires abortion doctors to enunciate the State's viewpoint on an unsettled medical, philosophical, theological, and scientific issue, that is, whether a fetus is a human being.  See <u>Roe v. Wade</u>, 410 U.S. 113, 159, 93 S. Ct. 705, 35 L. Ed. 147 (1972) (the word person as used in the Fourteenth Amendment does not include the unborn); <u>Casey</u>, 505 U.S. at 846 (Stevens, J., concurring) (fetus is a developing organism that is not yet a person).

      Unlike the statute upheld in <u>Casey</u> and other cases at the appellate level, the South Dakota statute also requires abortion doctors to create a statement in writing that includes the State's message that "the abortion will terminate the life of a whole, separate, unique, living human being" and that the pregnant woman's relationship with the unborn human being and her

existing constitutional rights with regard to that relationship will be terminated by the abortion. South Dakota's informed consent statute prior to amendment required the doctor to inform the woman that state-published materials on fetal development are available. See SDCL 34-23A-10.1(2).

In Fargo Women's Health Organization v. Schafer, 18 F.3d 526, 533-34 (8th Cir. 1994), the court upheld a North Dakota informed consent provision similar to the Pennsylvania statute and South Dakota's current law. See id. at 530. The North Dakota law explicitly allowed doctors to "disassociate themselves from the materials and may, or may not, comment on them as they choose."[2] Id. The amendments to SDCL 34-23A-10.1, however, contain no provision authorizing doctors to distance themselves from the State's message that they are forced to convey to their patients, and actually discourages doctors from expressing a view contradicting the State's message. In fact, the South Dakota statute requires the doctor to certify that the woman has read the materials and understands them. See H.B. 1166 § 7(1)(g) (S.D. 2005). If a doctor disassociates himself or herself from the materials or disagrees with the

---

[2]ND ST 14-02.1-02(b)(3) requires that the woman be informed at least 24 hours prior to the abortion that "she has the right to review the printed materials described in section 14-02.1-02.1. The physician or the physician's agent shall orally inform the woman the materials have been provided by the state of North Dakota and that they describe the unborn child and list agencies that offer alternatives to abortion. If the woman chooses to view the materials, copies of them must be furnished to her. The physician and the physician's agent may disassociate themselves from the materials and may comment or refrain from comment on them, as they choose."

materials while reviewing the materials with the patient, the doctor may have a difficult time certifying that the patient understands the materials. By requiring the doctor to express the State's views as if they were the doctor's opinion, the State's viewpoint would in essence be receiving the doctor's imprimatur. The requirement that doctors create a statement in writing that includes the State's message without a provision allowing the doctor to disassociate himself or herself from the materials leads to the conclusion that paragraphs (b), (c) and (d) of the informed consent provisions of the statute are unconstitutional compelled speech, rather than reasonable regulations of the medical profession.

For the reasons noted above, the court believes that this may violate the First Amendment protection against compelled speech. Accordingly, plaintiffs have shown that they have a fair chance of prevailing on the merits of their compelled speech claim. See Heartland Academy Cmty. Church, 335 F.3d at 690. This factor weighs in favor of plaintiffs.

### 2. Threat of Irreparable Harm

"The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." Kirkeby v. Furness, 52 F.3d 772, 775 (8th Cir. 1995) (quoting Elrod v. Burns, 427 U.S. 347, 373, 96 S. Ct. 2673, 49 L. Ed. 2d 547 (1976)). Because the statute would probably violate the First Amendment rights of abortion providers, plaintiffs will suffer

an irreparable harm if the injunction is not granted. See id. Thus, this factor weighs in favor of plaintiffs.

### 3. Balancing the Harms

Plaintiffs contend that defendants will suffer little harm if the statute is enjoined. Defendants allege that if the statute is enjoined, women seeking abortions in South Dakota will be harmed by the deprivation of their right to be informed that the unborn child is a human being, that they have a legal relationship with the unborn child, and that they may suffer psychological distress if they have an abortion. "As a consequence, they will have their abortions in ignorance, and may suffer the consequences of depression, anxiety, suicidal ideation and social isolation." Def. Brief at 6.

Regarding the potential health effects of having an abortion, the current statute requires doctors to advise women of the "particular medical risks associated with the particular abortion procedure to be employed." SDCL 34-23A-10.1. This statute will remain in effect if the court enjoins the amended version. H.B. 1166 § 10 (S.D. 2005). Thus, women seeking abortions will be advised of the relevant health risks whether or not the court issues an injunction.

Defendants' brief quotes legislative testimony from several women who claim that they were unaware that an abortion involved anything more than removing some tissue. Def. Brief at 4. The current informed consent law

13

requires the doctor to explain to the woman the "probable gestational age of the <u>unborn child</u> at the time the abortion is to be performed," the "medical risks associated with carrying <u>her child</u> to term," and that "the father is liable to assist in the support of <u>her child</u>." SDCL 34-23A-10.1(1)(c), (d), and (2)(b) (emphasis added). South Dakota law, therefore, already puts women seeking abortion on notice that abortion involves terminating an unborn child. Because South Dakota already has a robust informed consent abortion law, and because denial of the motion for preliminary injunction would likely lead to irreparable harm to plaintiffs' First Amendment rights, the court finds that the balance of equities weighs in favor of granting plaintiffs' motion.

**4. Public Interest**

The public interest is served by free expression on issues of public concern, such as abortion. <u>See</u> <u>Kirkeby</u>, 52 F.3d at 775. While it is true that the public has a strong interest in the freedom of state legislatures to act without interference from the judicial branch, the purpose of the Bill of Rights was to place certain subjects "beyond the reach of majorities and officials and to establish them as legal principles to be applied by the courts." <u>Barnette</u>, 319 U.S. at 639. The right to free speech and other fundamental rights "may not be submitted to vote; they depend on the outcome of no elections." <u>Id.</u> Because the public interest is served when the Legislature acts within its

constitutional limits, the court finds that the public interest factor weighs in favor of granting the injunction.

Plaintiffs have satisfied the four Dataphase factors to the extent necessary to support the scope of the requested preliminary injunction. Accordingly, it is hereby

ORDERED that plaintiffs' motion for preliminary injunction is granted.

IT IS FURTHER ORDERED that the following provisions of South Dakota Codified Laws shall not take effect on July 1, 2005:

1. 34-23A-10.1 ¶ 2;
2. 34-23A-10.1(1)(b);
3. 34-23A-10.1(1)(c);
4. 34-23A-10.1(1)(d);
5. 34-23A-10.1(1)(e); and
6. 34-23A-10.1(2).

Pursuant to SD H.B. 1166 § 10, the provisions of 34-23A-10.1 as of June 30, 2005, remain effective as long as this injunction remains in effect.

Dated October 4, 2006, nunc pro tunc June 30, 2005.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
CHIEF JUDGE